UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARLA JEAN DELONG,

    Plaintiff,

v.                                                    Case No. 8:20-cv-753-NPM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Darla Jean DeLong seeks judicial review of a denial of her application for disability insurance benefits. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 20). As discussed in this opinion and order, the decision of the Commissioner is reversed and remanded.

**I.  Eligibility for Disability Benefits and the ALJ's Decision**

    **A.  Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] An impairment limits someone's exertional abilities like standing or reaching, nonexertional abilities like seeing or hearing, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when someone's functional limitations preclude a return to past work or doing any other work sufficiently available in the national economy (or the limitations meet or equal the criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B. Procedural history and factual background

DeLong is sixty-six years old, has a high-school education, and worked as a stock clerk in retail. (Tr. 85). On August 18, 2016, DeLong applied for disability insurance benefits, claiming she was unable to work due to disabling conditions beginning March 20, 2016. (Tr. 61, 201-207). DeLong's application was administratively denied initially on October 27, 2016, and upon reconsideration on December 19, 2016. (Tr. 61, 72).

At DeLong's request, Administrative Law Judge Amber Downs held a hearing on December 6, 2018. (Tr. 13-52). On March 11, 2019, the ALJ issued a

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

decision finding DeLong not under a disability from March 20, 2016, through the date of the decision. (Tr. 86).

DeLong's timely request for review by the administration's Appeals Council was denied. (Tr. 1-5). DeLong then filed a Complaint (Doc. 1) on March 31, 2020, with this Court, and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 19).

### C. The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)

(plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found DeLong met the insured status requirements through September 30, 2020. (Tr. 81). At step one of the evaluation, the ALJ found DeLong had not engaged in substantial gainful activity since March 20, 2016, the alleged onset date. (Tr. 81). At step two, the ALJ characterized DeLong's severe impairments as: "obesity, osteoarthritis, and Crohn's disease/colitis." (Tr. 81). At step three, the ALJ determined DeLong did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 82).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. She can frequently work in humidity and wetness, extreme cold, extreme heat, and in vibration.

(Tr. 82-83). Consequently, the ALJ found DeLong unable to perform past relevant work as a retail stock clerk. (Tr. 85).

Finally, at step five, the ALJ found DeLong could perform other jobs that existed in significant numbers in the national economy. (Tr. 85-86). In support, a vocational expert identified three representative occupations an individual with DeLong's age (61 years old), education (as least a high school education), work experience, and RFC could perform:

(1) layaway clerk, DOT 299.467-010;[5]

(2) order filler, DOT 222.487-014; and

(3) service establishment attendant, DOT 369.477-014.

(Tr. 85-86).[6] Relying on the vocational expert's testimony, the ALJ concluded DeLong has not been under a disability from March 20, 2016, through the date of the decision. (Tr. 86).

## II.   Analysis

DeLong's appeal asks us whether the ALJ erred by not assigning more weight to the opinions of two of her treating physicians. (Doc. 20, pp. 8-24).

### A.   Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v.*

---

[5] The ALJ denied DeLong's objections and motion to exclude the vocational expert's testimony regarding the layaway clerk position. DeLong argued it was not an available job at two stores listed by the vocational expert. The ALJ found even if this job was not available, there were two other jobs listed. (Doc. 86).

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled—with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.     Whether the ALJ erred in weighing the opinion evidence of Dr. Haque and Dr. Reyes**

DeLong argues the ALJ erred in affording only some weight to Mahmudul Haque, M.D.'s opinion and little weight to Pamela Reyes, M.D.'s opinion. (Doc. 20, pp. 11, 13). Both Haque and Reyes were DeLong's treating physicians.

7

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's residual-functional-capacity determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).[7] Whenever a physician offers an opinion concerning the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the physician's opinion and the ALJ's reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).[8] Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)).

With respect to applications filed before March 27, 2017, an ALJ must consider several factors when assigning weight to medical opinions. 20 C.F.R.

---

[7] DeLong's claim was filed on August 18, 2016, and the regulations applicable to claims at that time required an assignment of weight by the ALJ to medical opinions. But due to an update in the regulations, medical opinions related to claims filed on or after March 27, 2017, are subject to a different assessment about their persuasiveness rather than weight. *See* 20 C.F.R. §§ 404.1520c, 404.1527(c).

[8] For claims filed on or after March 27, 2017, the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work and adapt to work-related conditions. *See* 20 C.F.R. § 404.1513(a)(2).

§ 404.1527(c). "For instance, the Social Security regulations command that the ALJ consider: (1) the examining relationship; (2) the treatment relationship, including the length and nature of the treatment relationship; (3) whether the medical opinion is amply supported by relevant evidence; (4) whether an opinion is consistent with the record as a whole; and (5) the doctor's specialization." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

Absent "good cause," the opinion of a treating physician must be given "substantial or considerable weight" *Williams v. Comm'r, Soc. Sec. Admin.*, 805 F. App'x 692, 694 (11th Cir. 2020) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)); *see* 20 C.F.R. § 404.1527(c)(2) (noting that an ALJ must provide "good reasons" for the weight given to a treating source's opinion). "Good cause" exists when "(1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (cleaned up).

In the decision, after summarizing some of Haque's treatment notes, the ALJ afforded some weight to Haque's opinion that DeLong would be off task fifteen percent of the day due to her digestive issues. (Tr. 84). The ALJ's purported good cause for not assigning substantial or considerable weight to this opinion was based

9

on a finding that Haque's treatment notes showed DeLong's "bowel movement issues improved and were generally normal with them sometimes varying." (Tr. 84).

As DeLong's treating physician, Haque had the benefit of considering DeLong's longitudinal medical records from May 2016 through July 2018. (*See, e.g.*, Tr. 460, 573). While the ALJ included some of Haque's treatment notes, he did not include others, which overall, show fluctuations in DeLong's digestive condition.

Haque's May 2016 treatment notes show DeLong's diarrhea was better with no abdominal pain. (Tr. 460). In June 2016, she was having multiple bowel movements (Tr. 455), and in July her bowel movements were normal (Tr. 443). But in September and October of 2016 and February 2017, she was irregular again. (Tr. 435, 530, 537). In May 2017, she had three to four bowel movements a day (Tr. 543), and in July of that year, she had four to five bowel movements a day (Tr. 551). In January 2018, DeLong had no new complaints and was doing well (Tr. 557), and in May 2018, DeLong denied having any problems or symptoms. (Tr. 568). But in July 2018, she suffered from loose stools. (Tr. 573).

In Haque's Irritable Bowel Syndrome Medical Source Statement, he diagnosed DeLong with Crohn's disease and found her symptoms to be chronic diarrhea. (Tr. 577). Haque specifically found DeLong would need to take two to three unscheduled restroom breaks during a workday. (Tr. 579). Further, Haque

10

found DeLong's symptoms would cause her to be off task and would interfere with her attention and concentration 15% of the workday. (Tr. 580).

While the treatment notes show improvement at times, DeLong's digestive issues could at other times require her to need unscheduled bathroom breaks. The ALJ acknowledged that while DeLong's bowel-movement issues improved and were generally normal, they were "sometimes varying." (Tr 84). But the ALJ did not account for this variation by adopting a functional limitation of two to three unscheduled restroom breaks per workday. (Tr. 579). In fact, the ALJ never mentioned this limitation in the decision. Further, DeLong testified she has diarrhea a couple of times a week. (Tr. 27). She also testified she had a "bout" of diarrhea a couple of days before the hearing. (Tr. 27). And while not clear from the record, these breaks and DeLong's need for them could logically interfere with her attention and concentration for 15% of the typical workday. Viewing the evidence as a whole—as we must—the ALJ failed to supply good cause for discounting this opinion.

DeLong also argues the ALJ erred in affording little weight to Pamela Reyes, M.D.'s residual functional capacity assessment that DeLong could only lift ten pounds rarely and could stand and walk for about three hours in an eight-hour day. (Doc. 20, p. 13). The ALJ found Reyes' opinion was "not consistent with the

11

evidence of record including the claimant's own testimony in which she stated that she could lift up to 25 pounds." (Tr. 85).

At the hearing, the ALJ asked DeLong how much weight she could lift or carry, and she responded, "maybe 20-25 pounds, maybe." (Tr. 35). DeLong's testimony conflicts with Reyes's finding that DeLong could lift 10 pounds rarely and 5 pounds occasionally. (Tr. 711). Other than this point of conflict, the ALJ only provided a conclusory statement that the remainder of Reyes' RFC statement was inconsistent with the evidence of record. (Tr. 85). Without a more fulsome statement as to why Reyes's remaining findings are inconsistent with the evidence of record, the Court does not find that substantial evidence supports the ALJ's decision to give little weight to her opinion.

### III. Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds the ALJ's decision to give only some weight and little weight respectively to the opinions of treating physicians Haque and Reyes is not supported by substantial evidence. And this error is not harmless because the decision to assign such little weight to these opinions led the ALJ to conclude that the limitations found by these treating physicians did not need to be included in the RFC.

It is **ORDERED** that the decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner

to reconsider Dr. Haque's and Dr. Reyes's opinions in light of the medical evidence of record and reconsider DeLong's RFC. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**ORDERED** in Fort Myers, Florida on September 22, 2021.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE